IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **ROBERT ALLEN BAUTISTA** § | |
| § | |
| **Plaintiff,** § | |
| § | |
| v. § | Civil Action No. 3:24-cv-02593-D |
| § | |
| **PRICEWATERHOUSECOOPERS LLP,** § | |
| § | |
| **Defendant.** § | |

## DEFENDANT'S UNOPPOSED MOTION TO ABATE AND COMPEL ARBITRATION AND BRIEF IN SUPPORT

Defendant PricewaterhouseCoopers LLP ("Defendant") moves the Court (the "Motion") for an Order abating this litigation and compelling to arbitration the claims brought by Plaintiff Robert Allen Bautista ("Plaintiff") in accordance with the arbitration agreement between Plaintiff and Defendant, and in support of its Motion, show the Court as follows:

## I.
## INTRODUCTION

Plaintiff filed suit against the firm, claiming that Defendant is improperly withholding taxes from his paycheck in violation of a litany of federal statutes including Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a) ("Title VII"), criminal laws, and international doctrines after he unilaterally determined in 2024 that he was no longer a U.S. Citizen.

As an initial matter, Plaintiff improperly served Defendant with this lawsuit and fails to state a claim upon which relief can be granted. Even so, Plaintiff is subject to a valid, mutually binding arbitration agreement wherein he agreed to submit all claims related to his employment to final, binding arbitration ("Arbitration Agreement") (attached hereto as Exhibit A). Accordingly, arbitration should be compelled and this case should be abated while the arbitration is pending.

## II.
## THE AGREEMENT TO ARBITRATE

On August 23, 2022, as part of the hiring process, Plaintiff electronically signed, among other agreements and materials, the Arbitration Agreement. *See* Exhibit A. At all times during his employment with Defendant, commencing at hire and throughout his employment, Plaintiff acknowledged, and agreed to abide by, the terms of the Arbitration Agreement, which provides for final binding arbitration of all employment-related disputes. The Arbitration Agreement provides that the disputes subject to the agreement include, but are not limited to:

> [D]isputes related to your application for employment, offer of employment, employment agreement, promotional opportunities, performance feedback, ***pay or compensation***, benefits, separation from employment, or work experience.
> . . .
> This Agreement applies to claims arising under any federal, state, or local statute, ordinance, regulation, public policy, or common law. . . . covered claims include those arising under . . . Title VII . . . . *See id.* at ¶ 1 (emphasis added).

Plaintiff initiated this action on October 15, 2024, alleging unlawful discrimination and "withhold[ing] incorrect taxes from [Plaintiff's] paycheck." *See* Complaint, Doc. 3. Plaintiff improperly served Defendant on October 25, 2024, by leaving the Complaint—**without** attached exhibits—with a receptionist in Defendant's Tampa, Florida office, after being informed that she was not authorized to accept service. Though Defendant has not been properly served, undersigned counsel is aware of Plaintiff's Complaint and appears now to ensure that this matter is properly compelled to arbitration. Defendant requested Plaintiff's position with respect to this Motion to compel the claims asserted in this action to arbitration. Subsequently, Plaintiff indicated that the claims should proceed pursuant to the Arbitration Agreement. *See* Exhibit B.

## III.
## ARGUMENTS AND AUTHORITIES

**A.  Agreements to Arbitrate Are Favored and Enforceable Under Federal and State Law.**

Federal and state laws strongly favor arbitration. *Cantella & Co. v. Goodwin*, 924 S.W.2d 943, 944 (Tex. 1996). The Arbitration Agreement at issue is valid and enforceable under both federal and state law. Furthermore, courts from various jurisdictions have ruled in several recent decisions that Defendant's employment arbitration agreements are, in fact, valid and enforceable. *See, e.g., Aldea-Tirado v. PricewaterhouseCoopers, LLP*, 101 F.4th 99, 109 (1st Cir. 2024) (compelling arbitration, and enforcing PricewaterhouseCoopers's arbitration agreement); *McCarey v. PWC Advisory Servs., LLC*, 2023 WL 4944686, at *6 (W.D. Pa. Aug. 3, 2023) (same); *Marley v. PricewaterhouseCoopers, LLP*, 2022 WL 500579, at *5 (D.N.J. Feb. 18, 2022) (same); *Ashford v. PricewaterhouseCoopers LLP*, 954 F.3d 678, 686 (4th Cir. 2020) (same); *Galli v. PricewaterhouseCoopers LLP*, 2020 WL 8768079, at *2 (S.D.N.Y. Aug. 12, 2020) (same); *Chatziplis v. PricewaterhouseCoopers LLP*, 2018 WL 3323820, at *5 (S.D.N.Y. July 6, 2018) (same).

   *i.    The Federal Arbitration Act requires arbitration.*

The Federal Arbitration Act (the "FAA") makes private agreements to submit disputes to arbitration valid and enforceable and requires courts to enforce arbitration agreements in the same manner as it enforces all contracts. *See* 9 U.S.C. § 1, *et seq.*; *Volt Info. Sciences v. Board of Trustees*, (1989); *Specialty Healthcare Mgmt., Inc. v. St. Mary Parish Hosp.*, 220 F.3d 650, 654 (5th Cir. 2000). The Agreement at issue in this case explicitly references the FAA.[1] Accordingly, the FAA applies here. "Section 2 of the FAA provides that written arbitration agreements 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the

---

[1] *See* Exhibit A, at ¶ 8.

**DEFENDANT'S UNOPPOSED MOTION TO ABATE AND COMPEL ARBITRATION                PAGE 3**

revocation of any contract.'" *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686-87 (1996) (quoting 9 U.S.C. § 2). "[A]s a matter of federal law, arbitration agreements and clauses are to be enforced unless they are invalid under principles of state law that govern all contracts." *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 166 (5th Cir. 2004) (emphasis in original) (interpreting Section 2). The United States Supreme Court has held that the FAA may be used to enforce arbitration agreements between employers and employees that are required as a condition of employment. *See Circuit City v. Adams*, 532 U.S. 105 (2001).

In *Circuit City*, the Supreme Court considered whether the arbitration component of Circuit City's Associate Issue Resolution Program could be enforced pursuant to the FAA. In concluding enforcement was appropriate, the Supreme Court expressly recognized the benefits of arbitrating employment disputes:

> [F]or parties to employment contracts . . . there are real benefits to the enforcement of arbitration provisions. We have been clear in rejecting the supposition that the advantages of the arbitration process somehow disappear when transferred to the employment context. Arbitration agreements allow parties to avoid the costs of litigation, a benefit that may be of particular importance in employment litigation.

*Id*. at 123 (citations omitted). Thus, federal policy favors the enforcement of valid arbitration agreements, particularly in disputes arising in the employment context.

**B.    The Arbitration Agreement Between the Parties Is Valid and Enforceable.**

A court asked to compel arbitration undertakes a two-pronged inquiry. *OPE Int'l LP v. Chet Morrison Contractors, Inc*., 258 F.3d 443, 445-46 (5th Cir. 2001). Under the first prong, the court must determine whether the parties agreed to arbitrate the dispute at issue. *Id*. at 445. Two considerations bear on this determination: (1) whether a valid agreement to arbitrate exists, and (2) whether the dispute in question falls within the scope of that agreement. *Id*. "If the court finds that the two-prong inquiry is satisfied, arbitration is mandatory." *Gray v. Sage Telecom, Inc.*, 410

F. Supp. 2d 507, 510 (N.D. Tex. 2006) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)). The party moving to compel arbitration bears the initial burden of proving the existence of a valid agreement to arbitrate, which is a question of state contract law. *See Huckaba v. Ref-Chem, L.P.*, 892 F.3d 686, 688 (5th Cir. 2018).

> i.  *The Arbitration Agreement is a valid contract.*

Pursuant to state and federal law, ordinary state-law contract principles determine the validity of a written arbitration agreement. *Valero Refining, Inc. v. M/T Lauberhorn,* 813 F.2d 60, 64 (5th Cir. 1987). In Texas, "an employer may enforce an arbitration agreement entered into during an at-will employment relationship if the employee received notice of the employer's arbitration policy and accepted it." *In re Dallas Peterbilt, Ltd.,* 196 S.W.3d 161, 162 (Tex. 2006).

It is undisputed that Defendant presented Plaintiff with the Arbitration Agreement, he signed the Agreement, and thereafter continued working for and accepting compensation from Defendant. *See* Exhibit A. Plaintiff was aware of the terms of the Arbitration Agreement and its impact—in fact, he signed and acknowledged it, affirming that he read and understood that the Arbitration Agreement required him to arbitrate "when the dispute relates in any way to, or arises out of, [his] employment." *See* Exhibit A. Plaintiff's conduct constitutes acceptance as a matter of law. *See In re Halliburton Co.,* 80 S.W.3d 566, 568-69 (Tex. 2002); *Quinn v. EMC Corp.*, 109 F. Supp.2d 681, 687 (S.D. Tex. 2000).

A valid contract requiring Plaintiff and Defendant to arbitrate this dispute exists, and federal and Texas law mandates that this Motion must be granted.

> ii. *Plaintiff's claims are within the scope of the Arbitration Agreement.*

In *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, the Supreme Court held "[the FAA] establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is construction of

the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." 460 U.S. 1, 24-25 (1983); *see also OPE Int'l LP v. Chet Morrison Contrs., Inc.,* 258 F.3d 443, 445 (5th Cir. 2001). Here, the coverage clause in the Arbitration Agreement broadly covers all employment-related disputes. *See* Exhibit A.

Plaintiff's Complaint includes claims for national origin discrimination under Title VII and various violations of federal laws related to the alleged incorrect withholding of taxes from Plaintiff's paycheck. Plaintiff's claims inarguably fall within the express written scope of the Arbitration Agreement as they relate directly and solely to his employment. The United States Supreme Court has held that in "the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *ATT Technologies, Inc. v. Commc'n Workers of America*, 475 U.S. 643 (1986). Not only is there a complete absence of "forceful evidence" negating the application of the arbitration agreement to Plaintiff's claims, there is also no evidence that even remotely negates its application to his claims.[2] As a result, Plaintiff's claims are covered by the Arbitration Agreement, and the Motion must be granted.

## IV.
## CONCLUSION

For these reasons, Defendant requests that the Court, in line with other courts, enter an Order abating this lawsuit and compelling to arbitration all of Plaintiff's claims in accordance with the terms of the Arbitration Agreement. Defendant further requests such other relief as the Court deems appropriate.

---

[2] Moreover, in the unlikely event of ambiguity about the scope of the Arbitration Agreement, the United States Supreme Court precedent mandates that ambiguities be resolved in favor of arbitration. *Moses,* 460 U.S. at 24-25 ("[the FAA] establishes that, as a matter of law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.").

Respectfully submitted,

*/s/ Kristin Snyder Higgins*
KRISTIN SNYDER HIGGINS
Texas State Bar No. 24046880
kristin.higgins@ogletree.com
NATALIE A. DARGENE
Texas Bar No. 24144213
Admission to Northern District of Texas pending
natalie.dargene@ogletrees.com
**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**
8117 Preston Road, Suite 500
Dallas, TX 75225
Telephone: (214) 987-3800
Fax: (214) 987-3927

**ATTORNEYS FOR DEFENDANT**

**CERTIFICATE OF CONFERENCE**

I hereby certify that on November 14, 2024, I reached out to Plaintiff to confer on the relief requested in this Motion and Plaintiff confirmed in writing that his claims should proceed pursuant to the Arbitration Agreement.

*/s/ Kristin Snyder Higgins*
Kristin S. Higgins

**CERTIFICATE OF SERVICE**

I hereby certify that on November 15, 2024, a true and correct copy of the foregoing document has been electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Kristin Snyder Higgins*
Kristin S. Higgins